**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA SANTORO,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO. 18-0387-CG-B** |
| | : | |
| **ROBERT D. AGERTON,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

<u>**REPORT AND RECOMMENDATION**</u>

This matter is before the Court on Margaret Wilson, Stephanie Brown, and Joe Whitt's (collectively referred to as "Defendants") Motions to Dismiss.  (Docs. 30, 37, 42).  These motions were referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72.  For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that each Defendant's motion be **GRANTED**.

**I.   Background.**

Patricia Santoro ("Santoro" or "Plaintiff"), who is proceeding *pro se and in forma pauperis*, asserted claims against Judge Richard D. Agerton (Judge of Probate in Escambia County, Alabama), Margaret Wilson (Alabama DHR case worker), and Stephanie Brown (intake therapist at Southwest Alabama Mental Health Center)

regarding her involuntary civil commitment[1].   (Doc. 6 at 3-12). In her original filing, Santoro alleged that, during the process of involuntarily committing her to Crenshaw Community Health Center for psychiatric treatment, the above-referenced Defendants violated her due process rights under the Fourth and Fourteenth Amendments of the United States Constitution.  (Id. at 4-10).

On October 29, 2018, Santoro filed an Amended Complaint naming an additional Defendant, Joe Whitt (her court-appointed attorney and guardian ad litem).  (Doc. 12).  Santoro's Amended Complaint is not the model of clarity.  Nevertheless, she asserts that the Court has jurisdiction over this matter pursuant to 28 §§ 1331 (federal question jurisdiction) and 1343,[2] as she brings claims for violations of the United States Constitution through 42 U.S.C. §§ 1983 and 1985.  She states that she is suing Defendants in their "individual capacities."  (Id. at 1; Doc. 45 at 20).  Santoro asserts claims for deprivation of liberty interests, deprivation of due process rights under the Fourth and Fourteenth Amendments,

---

[1] Santoro originally filed this action in the United States District Court for Northern District of Florida. (Doc. 6 at 15-17). The case was later transferred to this Court. (Id.).

[2]  28 USC § 1343 confers jurisdiction on District Courts to hear certain causes of action, namely, questions arising under Acts of Congress where a federal right is being asserted that provides for equal rights of citizens. It is merely jurisdictional and cannot itself be the basis for a cause of action.  See Easley v. Blossom, 394 F. Supp. 343, 345 (S.D. Fla. 1975).

conspiracy to interfere with her civil rights, negligent infliction of emotional distress, and ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. (Doc. 12).

On February 21, 2019, the Court ordered the dismissal of Defendant Judge Robert D. Agerton, prior to service of process. (Doc. 16). The Court determined, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii), that the claims against Judge Agerton were frivolous in that they sought relief against a defendant who is immune from suit. (Id.). The remaining Defendants have all been served and each has filed a motion to dismiss pursuant to Rules 12(b)(1) and/or (6) of the Federal Rules of Civil Procedure. (Docs. 30, 37, 42). The motions have been fully briefed and are now ripe for consideration.

### A. Factual Allegations.

The following facts are drawn from Plaintiff Patricia Santoro's filed documents, including her Complaint, Amended Complaint, Responses to Defendants' Motions, and documents incorporated therein. (Docs. 6, 12, 45, 46). On August 28, 2017, Santoro's sister, Nicole Santoro, petitioned the Probate Judge of Escambia County, Alabama, to involuntarily commit Plaintiff because she was allegedly abusing and stealing from their elderly mother (with whom Plaintiff was residing) and because Plaintiff

was alleged to be mentally ill.[3]   (See Doc. 12-1 at 2-3).   The petition lists Nicole Santoro, Christina Proctor (Patricia Santoro's estranged daughter), and Margaret Wilson (Escambia County DHR case worker)[4] as persons with knowledge of Santoro's mental illness and potential witnesses.  (Id. at 3).  The following day, August 29, 2017, the probate court ordered that Santoro be picked up and transported to the Southwest Alabama Mental Health Center for evaluation.  (Id. at 4).

Santoro was located at her mother's residence on the same day, placed in three-point shackles, and taken to Southwest Alabama Mental Health Center, where she was evaluated by Stephanie Brown. (Doc. 12 at 2-3).   Santoro asserts that she informed "Stephanie

---

[3] On the same date, August 28, 2017, Nicole Santoro and Christina Proctor also petitioned the Probate Court of Escambia County, Alabama, for Appointment of Guardian and Conservator of Lillie Entrekin (Santoro's mother).  (Doc. 45-2 at 1-7).

[4] According to Plaintiff, Defendant Wilson made visits to Ms. Lillie Entrekin's (Santoro's mother) home in the weeks preceding Plaintiff's involuntary commitment based upon the allegations of Nicole Santoro and Christina Proctor that Plaintiff was abusing and stealing from Ms. Entrekin.  (Doc. 12 at 12).   According to Plaintiff's pleadings, during the home visits, Wilson "insisted that [Plaintiff Santoro] was seriously mentally ill."  (Id.).

The initial complaint also claims that Defendant Wilson created and submitted a video to Judge Agerton as evidentiary support of the petition to commit Santoro.  (Doc. 6 at 5).   According to Santoro, the video was not a true indication of her mental state and was more prejudicial than probative because the video was "precipitated by an hour of harassment by Patricia's daughter, Christina Proctor, and her husband, Tommy Proctor" which was not included in the footage.  (Id.).

Brown about her current family dynamic, and that Lakeview Center in Pensacola had determined that [she,] Patricia[,] was not in need of psychiatric care in December of 2016.  Patricia also told Stephanie Brown that she had not had her Levothyroxine[5] in over two weeks.  Patricia's TSH levels were elevated.  Elevated TSH presents with psychological symptoms.  Patricia had previously told Margaret Wilson about the determination made in December of 2016 at Lakeview Center, and also that her TSH levels were raised."  (Doc. 6 at 6).  Santoro further asserts that Stephanie Brown evaluated her for approximately ten minutes, diagnosed her with severe bipolar disorder, and informed her that she would be committed to the psychiatric unit of Crenshaw Community Hospital in Luverne, Alabama.  (Doc. 12 at 3).

According to Santoro, she was not suicidal, homicidal, a danger to herself or others, or in need of mental treatment at the time she was committed.  Santoro alleges that the commitment proceedings were initiated by her sister for vindictive purposes after their mother, Lillie Entrekin, chose Santoro to care for her instead of Nicole.[6]  (Id.).  Santoro further alleges that it is

_____

[5] Levothyroxine is a medication used to treat an underactive thyroid gland.  See WebMD, Levothyroxine Solution, https://www.webmd.com/drugs/2/drug-1433-2020/levothyroxine-oral/levothyroxine-solution-oral/details (last visited June 25, 2019).

[6] Plaintiff Santoro asserts in her Response to Defendants' motions that "[w]hen Lillie fell in her yard on August 1st, 2017, Nicole and Christina had a meeting of the minds with the goal of ousting

reasonable to assume that Stephanie Brown had prior contact with Margaret Wilson, implying that Brown had a predetermined bias against Patricia. (Doc. 12 at 12).

Santoro asserts that, after being admitted to the hospital, the staff informed her that she had a court hearing on September 5, 2017. (Id. at 5). On September 5, 2017, a hospital official completed a discharge form indicating that Santoro had reached maximum improvement. According to Santoro, she was told that her hearing had been rescheduled for September 6, 2017. (Id. at 4-5). Santoro contends that she subsequently learned that Joe Whitt, her Court appointed guardian ad litem, had informed the Court, on September 5, 2017, that Santoro needed to be involuntarily committed for not more than 150 days, despite the fact that he had not spoken with her. (Id. at 6). Santoro further contends that, without her presence at the September 5th hearing, the Probate Judge determined that it was in Santoro's best interest to forgo a preliminary hearing and to commit her for no more than 150 days. (Id.).

According to Santoro, a hearing was conducted on September 6, 2017, and during the hearing, her sister and Santoro's estranged daughter both provided false testimony. Further, Joe Whitt failed

---

plaintiff as Lillie's caretaker and personal representative so they could gain control over Lillie's estate." (Doc. 45 at 10).

to extensively cross examine them.[7]  (Id. at 8-9).  Santoro alleges

that the Probate Judge interrupted her while she was trying to

testify,[8] and also refused to allow her mother to speak.  (Doc. 12

at 9).  Santoro further alleges that the Probate Judge into his

chambers for a long time, and when he came out, announced the same

decision that had been reached in her absence the day before,

namely that she was to be involuntarily committed for not more

than 150 days.[9]  (Id.).

---

[7] Santoro contends that Defendant Wilson had spoken with Santoro's
mother and knew that her mother had denied the allegations of abuse
being made by Santoro's estranged sister and daughter.  (Doc. 12
at 12).

[8] In her original complaint, Santoro alleged that, while testifying
under direct examination, she was "emotional" but "not disruptive
per se."  (Doc. 6 at 8).  Still, "Judge Agerton halted the
proceeding and refused to allow Patricia to testify on her behalf
(sic) of herself any further."  (Id.).  Judge Agerton further
denied her three witnesses the right to testify regarding her state
of mind.  (Id.).

[9] Santoro argues that she did not fit the criteria for involuntary
commitment based on the discharge form completed by the psychiatric
facility on September 6, 2017.  Notably, the Discharge Referral
Form from Crenshaw Community Hospital Special Services Unit, which
is attached to Santoro's amended complaint, is dated "08/06/17".
(Doc. 12-1 at 7).  This date appears to be a scrivener's error,
given that the admittance date on the document is listed as
08/29/17.  (Id.).  Accordingly, the Court presumes the discharge
date should be read as 09/06/17, as represented by Plaintiff in
her complaint.  Thus, the Court will refer to the form's date as
September 6, 2017.

The September 6, 2017 discharge form lists a diagnosis of bipolar
mood disorder and hypomania, and reflects that Santoro is to be
discharged to "Court/home".  (Doc. 12-1 at 7).  The discharge form
further reflects that, at the time of her discharge, Santoro's

Santoro asserts that she was returned to Crenshaw Community Hospital where she was treated and then discharged on September 13, 2017.  The discharge form reflects that Santoro had "reached maximum benefit from hospitalization."  Santoro's diagnosis was listed as bipolar mood disorder and "MRE [most recent episode] manic," and her disability level at the time of discharge was noted as "mild."  (Doc. 12-1 at 8).

### B. Plaintiff's Claims and Requested Relief.[10]

Santoro contends that, at the time she was taken into custody, she was not suffering from mental "deterioration" and that Defendants Brown and Wilson provided inaccurate information to the probate judge which resulted in her involuntary confinement without probable cause and deprivation of her liberty interests. (Doc. 12 at 3-4).  Santoro further alleges that the probate judge and Defendant Whit deprived her of her due process rights in that was not served with the Petition for Involuntary Confinement, and she was not afforded a formal hearing.  (Id. at 3).  According to Santoro, she was held in emergency detention without a hearing for

---

level of disability was "mild" and that she had "reached maximum benefit from hospitalization."  (Id.).

[10] In her Amended Complaint, Santoro separated each of her claims with a "heading" that is followed by a set of paragraphs. Although, as stated, the Amended Complaint is not the model of clarity, it appears that for each claim asserted in a "heading," Santoro has listed, in the accompanying paragraphs, each Defendant she contends is responsible for the challenged action.

eight (8) days, in violation of the seven-day limit set out in Lynch v. Baxley, 386 F. Supp. 378 (M.D. Ala. 1974);[11] she was wrongly denied her right to attend the probable cause hearing on September 5, 2017; and she was denied the right to testify and present witnesses on September 6, 2017. (Doc. 12 at 4-9). She further contends that Defendant Whit denied her Sixth Amendment right to effective assistance of counsel (id. at 9-11), that Defendants conspired to violate her civil rights by having her involuntarily committed, and that Defendants' negligent and improper actions caused her to suffer mental and emotional stress. (Id. at 11-15).

Santoro requests monetary damages in the amount of $15,000 per day for the "16 days" that she was confined at Crenshaw Community Hospital, compensatory damages in the amount of $200,000 for emotional and mental suffering, $250,000 in punitive damages "to deter the defendants from continuing to unlawfully commit

---

[11] In Lynch v. Baxley, 386 F. Supp. 378 (M.D. Ala. 1974), the Court held that "[e]mergency detention without a hearing on its appropriateness and necessity can be justified only for the length of time required to arrange for a probable cause hearing before the probate judge or other judicial official empowered by law to commit persons to the [state] mental institutions. In no event may such detention in the absence of a probable cause hearing exceed seven (7) days from the date of the initial detention." Lynch 386 F. Supp. at 388. Based upon Santoro's own assertions, it appears that the hearing was in fact conducted within seven (7) days of her detention. According to Santoro, she was detained on August 29, 2017, and her hearing was conducted on September 5, 2017, which is within the seven (7) day window set forth in Lynch.

persons of a protected class without due process," and attorney fees in the amount of $500.00. Santoro also requests a trial by jury. (Id. at 15-16).

## II.  Standard of Review.

### A. Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the court. "[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." McElmurray v. Consolidated Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). A "facial attack" is based solely on the pleadings and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232-33 (11th Cir. 2008). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion -- the court must consider the allegations of the complaint to be true." Lawrence v. Sunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)(citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)). However, the Court is not required to accept mere conclusory allegations as true. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205-06 (11th Cir. 2007). A factual attack, on the other hand, challenges "subject matter jurisdiction in fact,

irrespective of the pleadings." Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003).  In resolving a factual attack, the court "may consider extrinsic evidence such as testimony and affidavits." Makro Capital of Am., Inc. v. UBS AG, 543 F.3d 1254, 1258 (11th Cir. 2008).

**B. Fed. R. Civ. P. 12(b)(6).**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted.  In ruling on the motion, the Court must accept as true the allegations set forth in the complaint, drawing all reasonable inferences in the light most favorable to the plaintiff.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  A complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S 662, 678 (2009) (quoting Twombly, 550 U.S. at 555); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007).  Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570).  Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "plausibility standard" is not akin to a probability

requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id. "Factual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555 (quotations marks and second brackets in original).

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. However, *pro se* plaintiffs are afforded more leniency and their complaints are read more liberally than those drafted by attorneys. Osahar v. U.S. Postal Serv., 297 Fed. Appx. 863, 864 (llth Cir. 2008). When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a less stringent standard than those of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by* Iqbal, 556 U.S. 662 (2009). Moreover, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

**III. Discussion.**

    **A. Subject Matter Jurisdiction: <u>Rooker-Feldman</u>.**

    Defendants argue that this action should be dismissed because the Court lacks subject matter jurisdiction pursuant to the <u>Rooker-Feldman</u> doctrine.  The Rooker-Feldman doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state-court litigation. <u>See</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415-16 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476-82 (1983).  The Eleventh Circuit has described the Rooker-Feldman doctrine as follows:

> The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment.  A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."

<u>Siegel v. LePore</u>, 234 F.3d 1163, 1172 (11th Cir. 2000)(en banc) (citations omitted).

    In <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005), the Supreme Court concluded that the inferior federal courts had been applying <u>Rooker-Feldman</u> too broadly and clarified that the federal district courts should apply the doctrine only to

13

those cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Target Media Partners v. Specialty Mktg. Corp., 881 F.3d 1279, 1285 (11th Cir. 2018)(citing Exxon Mobil, 544 U.S. at 284). To determine which claims invite rejection of a state court decision, the Eleventh Circuit considers whether the claim was (1) actually adjudicated by a state court or (2) one "inextricably intertwined" with a state court judgment. Id., 881 F.3d at 1286.

Claims considered "inextricably intertwined" with a state court judgment are "limited to those raising a question that was or should have been properly before the state court." Id. A federal claim is not considered to be "inextricably intertwined" with a state court judgment "when there was no reasonable opportunity to raise that particular claim during the relevant state court proceeding." Id. (internal quotations and citations omitted). Thus, the "question posed to the federal court must be intertwined with the 'state court judgment' not only to the extent that it involves the state court proceedings but also to the extent that a determination reached by the state court would have to be relitigated in federal court." Target, 881 F.3d at 1287 ("that is, the legal and factual issues decided in the state court and at

issue in federal court . . . must be under direct attack for
Rooker-Feldman to bar our reconsideration").

In this case, Defendants Wilson and Whitt contend that
Santoro's allegations of procedural irregularities, denial of her
right to be heard, denial of effective assistance of counsel,
negligent mental evaluation, and conspiracy to involuntarily
commit her without due process, all arise from actions taken during
her civil commitment proceedings and the manner in which the
probate judge handled those proceedings. Defendants further
contend that as a "'state court loser,' Santoro is seeking redress
for injuries incurred during and as a result of that commitment
order," and is thus violating the Rooker—Feldman doctrine. (Doc.
43 at 4). According to Defendants, "[t]he entirety of Santoro's
complaint is premised on her contention that Judge Agerton's
commitment decision was improper" and "her federal claims would
succeed only to the extent that the state court wrongly decided
the issues." (Id. at 5).

In response, Santoro states:

Plaintiff has not requested the court review the state
court judgment per se. Plaintiff is invoking the
district court's jurisdiction to vindicate her federal
civil rights that were violated during the course of the
proceedings **that led to the state court decision.**
Plaintiff is not contending that the state court
judgment is unconstitutional or that the state court
judgment is the cause of her injuries suffered, but the
lack of procedural due process safeguards **that allowed
the state court to come to the decision it made caused
her injuries.**

(Doc. 45 at 14) (emphasis added).

Turning to the current action and construing Santoro's amended complaint in the light most favorable to her, there is no dispute that Santoro is a federal plaintiff who lost in state court, that the state court judgment is final, and that it was rendered before Santoro filed this federal suit. However, that is not the end of the inquiry. The Court must also determine whether Santoro could have raised her federal claims in the state court proceedings and whether the issues before this Court were adjudicated by the state court or are inextricably intertwined with the state court's civil involuntary commitment order. With respect to whether the issues here are inextricably intertwined with the state court judgment, the Court must consider whether any of Santoro's claims is an independent claim for past misconduct, rather than an attack on the judgment itself.

As noted, *supra*, Plaintiff Santoro was civilly committed by state probate Judge Agerton, Escambia County, Alabama. Santoro contends that her commitment deprived her of liberty and due process rights and was caused by the insufficient and incorrect evidence that Defendant Wilson, an elder abuse caseworker with DHR, and Defendant Brown, a therapist at Southwest Alabama Mental Health, provided to the probate judge, who in turn issued the order of involuntary commitment. (Doc. 12 at 3, 12, 14). Because these

claims go to the sufficiency of the evidence which led to Santoro's civil commitment, they could have been raised in the state court.

Moreover, regardless of how Santoro characterizes her constitutional claims against Defendants Wilson and Brown, the essence of those claims is that Wilson and Brown provided the probate judge with opinions with which Santoro did not agree, and on which the judge relied in deciding to commit her. Clearly, this is an attack on the state court civil commitment order and invites a review of that judgment; as such, it is barred by the Rooker-Feldman doctrine.[12] Thus, Santoro's claims against Defendants Wilson and Brown are barred by the Rooker-Feldman doctrine. Cf. Liedtke v. Runningen, 2016 U.S. Dist. LEXIS 135898, *4, 2016 WL 5660455, *4 (D. Minn. Sept. 29, 2016), aff'd, 697 Fed. Appx. 468 (8th Cir. 2017)(review of whether or not "Defendants followed proper procedure leading up to [Plaintiff's] civil commitment under state law is essentially a challenge to the commitment itself."); Spencer v. Bellevue Hosp., 2012 WL 1267886, *5 (S.D.N.Y. Apr. 12, 2012)(citing Exxon and holding that claim that hospital defendants and social services defendant violated plaintiff's due process rights by involuntarily committing her and

---

[12] Santoro's claim that Defendants Wilson, Brown, and Whitt conspired with Judge Agerton to deprive her of her civil rights also could have been raised in the state courts and invites a review of the sufficiency of the evidence supporting the state court decision; thus, it is barred by the Rooker-Feldman doctrine.

medicating her dismissed pursuant to Rooker-Feldman; "[plaintiff] attempts to frame her complaint not as a challenge to the state court judgment, but as arising from violations of her civil rights, by way of her involuntary commitment and medication. The problem with this argument is that it was the New York State Supreme Court that ordered both [plaintiff's] commitment and the administration of medication. . . . [T]o the extent plaintiff is attempting to assert a Section 1983 claim against these defendants based upon her belief that the involuntary commitment orders . . . were illegal, such claim is barred by the Rooker-Feldman doctrine.")(internal quotation marks omitted); see also McCavey v. Gold, 625 Fed. Appx. 968 (11th Cir. 2015)(plaintiff's claim that defendants, who were involved in plaintiff's prior divorce proceeding, acted improperly in relation to that decision, including allegations of collusion, conspiracy, reliance on guardian ad litem's faulty and biased findings, exclusion of evidence, and denial of certain motions, was barred by the Rooker-Feldman doctrine, since plaintiff's allegations could be characterized as a claim that "the state divorce judgment was improperly rendered," and, although the allegations did not expressly or directly attack the divorce judgment, the claims for

damages succeeded only "to the extent that the state court wrongly decided the issues presented in the divorce case.").[13]

Santoro further claims that Defendant Whitt provided poor counsel by failing to properly prepare for her case and vigorously cross-examine the witnesses against her.  These assertions are based on counsel's performance in representing Santoro during the commitment and arguably address conduct that is independent of the state court commitment order.  Accordingly, at this stage of the case, Defendant Whitt is not entitled to dismissal of Santoro's constitutional claims based on the Rooker-Feldman doctrine.

**B. Failure to State a Claim.**

42 U.S.C. § 1983 provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States.  See 42 U.S.C. § 1983.  In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, she must allege two things: (1) conduct of a person or entity acting under color of

---

[13] In McCavey, plaintiff initially filed suit in the district court under §§ 1983 and 1988 against various defendants involved in his previous divorce proceedings (including judges, guardian ad litem for minor children, court-appointed evaluator, and ex-wife's attorney), alleging intentional "misconduct, collusion, conspiracy, and bias" that violated his rights under the United States Constitution in numerous ways.  The district court held that, "because the claims raised in the Complaint [were] inextricably intertwined with the state court judgment, the Rooker-Feldman doctrine deprive[d] th[e] Court of jurisdiction."  Id., 2015 WL 248488, *5 (N.D. Ga. Jan. 20, 2015), aff'd in part, appeal dismissed in part, 625 F. Appx. 968 (11th Cir. 2015).

state law; and (2) that such conduct resulted in a deprivation of her rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Martinez v. Burns, 459 Fed. Appx. 849, 850-851 (11th Cir. 2012)(citing Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005)); Harvey v. Harvey, 949 F.2d 1127, 1130 (llth Cir. 1992).  The threshold inquiry then is whether the Defendants acted under color of state law or whether the alleged actions are fairly attributable to the State.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Harvey, 949 F.2d at 1130. Santoro must also allege an affirmative causal connection between Defendants' conduct and the constitutional deprivation.  Marsh v. Butler Cnty., 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Therefore, a defendant may be held liable under § 1983 only if he was personally responsible for the constitutional violation. Keating v. City of Miami, 598 F. 3d 753, 762 (11th Cir. 2010).

The law is clear that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Focus on the Family v. Pinellas Suncoast Transit Auth, 344 F.3d 1263, 1277 (11th Cir. 2003).  Only in rare circumstances can a private party be viewed as a "state actor" for the purposes of an action under § 1983.  For a private person to qualify as a "state actor" under § 1983, one of the three tests must be satisfied: (1) "State Compulsion Test" wherein the

state has coerced or significantly encouraged the violative conduct; (2) "Public Function Test" wherein private parties perform a public function that is traditionally the exclusive prerogative of the state; and (3) "Nexus/Joint Action Test" wherein the state has insinuated itself into a position of interdependence with the private party, such that the state and private party are essentially joint participants in an enterprise. Id.

### 1. § 1983 Claims against Defendants Brown and Whitt.

As noted, Santoro alleges that Defendant Brown, an intake therapist at Southwest Alabama Mental Health Center, violated her Fourth and Fourteenth Amendment rights by providing the probate judge an inaccurate or false psychological evaluation during her civil commitment proceedings. Santoro also alleges that Defendant Whitt, who was appointed by the court to serve as her guardian ad litem and attorney during the civil commitment proceedings, denied her constitutional rights to due process and effective assistance of counsel by waiving her right to attend her preliminary hearing on September 5, 2017, and by failing to prepare or present a proper defense and cross-examination of witnesses who testified to have her involuntarily committed. (Doc. 12 at 3-12).

Both Defendants seek the dismissal of Santoro's § 1983 claims against them due to lack of state action. Aside from alleging that the probate judge directed Brown to prepare a psychological evaluation, and that the report she prepared was inaccurate or

false, Santoro has offered no facts that suggest state action by Brown.  The record is devoid of any facts that reflect that Brown was performing an activity traditionally the exclusive prerogative of the state or  that she was coerced by the judge to engage in violative conduct.  While Santoro makes vague and conclusory allegations that Brown and Wilson, a DHR employee, probably communicated with one another, these assertions fall far short of pleading that they were intertwined to such a degree that they were joint participants in an enterprise, and that Brown should thus be deemed a state actor.

Santoro's § 1983 claims against Defendant Whitt are also due to be dismissed for lack of state action.  As discussed above, Santoro must allege that the alleged deprivation was committed *by a person acting under color of state law*."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted) (emphasis added).  It is well settled that the mere appointment of an attorney or guardian ad litem by the state court to represent a litigant in court proceedings does not qualify the attorney or guardian ad litem as a state actor for purposes of § 1983 liability.  See McIndoo v. Broward Cnty., 750 Fed. Appx. 816, 820 (11th Cir. 2018) ("That Mathis-Scarbrough [court-appointed attorney] and Curry [court appointed "best interest advocate"] were appointed by the state court is also insufficient by itself to transform them into state actors")(citing Vermont v. Brillon, 556 U.S. 81, 91 & n.7

(2009)("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor."); Harvey, 949 F.2d at 1129-33(guardian ad litem was not a state actor for purposes of § 1983 in suit by plaintiff who had been involuntarily committed after state-appointed guardian ad litem recommended her commitment); Higdon v. Smith, 565 Fed. Appx. 791, 793 (11th Cir. 2014) (state-appointed guardian ad litem was not a state actor under § 1983); Dees v. Rich, 2014 U.S. Dist. LEXIS 135754, *4, 2014 WL 4793555, *2 (S.D. Ala. Sept. 25, 2014)(court-appointed attorneys are not official state actors and are not subject to suit under section 1983)(citing Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981) ("a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); McQueen v. Keith, 2019 U.S. Dist. LEXIS 141045, *4, 2019 WL 4419000, *2 (S.D. Ala. Aug. 16, 2019), *report and recommendation adopted as modified*, 2019 WL 4417481 (S.D. Ala. Sept. 16, 2019) ("[a]n attorney who represents a criminal defendant, whether court-appointed or retained, does not act under color of state law."). By representing Santoro in her civil commitment proceedings, Defendant Whitt was acting in accordance with his role as court-appointed counsel and a court-appointed guardian ad litem and, thus, was not a "person acting under color of state law" under § 1983.

**2. Conspiracy Claims against Defendants Brown and Whitt.**

As discussed, in her amended complaint, Santoro alleges that Defendants conspired to involuntarily commit her without due process. (Doc. 12 at 14). Specifically, Santoro alleges that "Brewton is a very small town," and as such, "it is reasonable to consider that Margaret Wilson and Stephanie Brown had spoken to each other regarding Patricia Santoro." (Id. at 12). Santoro alleges that the probate judge relied on the statements of Defendants Wilson and Brown to involuntarily commit her, and "when Joe Whitt agreed with Judge Agerton that it was in Patricia's best interest to involuntarily commit her for up to 150 days, a conflict of interest, and an implied conspiracy to interfere with civil rights was created." (Id. at 10, 12).

To state a claim for a conspiracy under § 1983 in this case, Santoro must plead, in detail, the relationship or nature of the alleged conspiracy between the private-party Defendants (Whitt and Brown) and a state actor (such as Wilson or Judge Agerton). Harvey, 949 F.2d at 1133. To the extent that Santoro challenges the actions of private parties with one another, her § 1983 claim fails. Id. To the extent that she challenges the private-party Defendants' conduct or actions in concert with a state actor, she potentially raises a claim. See, e.g., Harvey, 949 F.2d at 1133 ("if properly alleged, 'the private parties conspiring with the judge were acting under color of state law; and it is of no consequence that the judge himself is immune . . .'").

In the instant case, as in Harvey, the allegations of Santoro's complaint "merely string together the discrete steps of the commitment process, without showing contacts between the [defendants] that could prove private and alleged state actors had reached an understanding to violate her rights." Id. (internal quotations and citations omitted). To the extent that Santoro claims that the probate relied on false or inaccurate information provided by Defendants Wilson and Brown in the commitment proceedings, there is no allegation or indication that the judge knew that any facts put forth by the Defendants were false or inaccurate; thus, without the judge's knowledge, the complaint fails to properly allege conspiracy involving a state actor. See id. Likewise, the probate judge's involvement with attorney/guardian ad litem Whitt evidences the normal judicial and procedural process, not a conspiracy or premeditated agreement between the parties. As such, Santoro's allegations are simply conclusory and do not plead a conspiracy sufficient to transform the private-party Defendants into state actors. See id. Because Santoro has not alleged facts that show "an agreement between two or more people (at least one of whom is a state actor) to violate [plaintiff's] constitutional rights," AFL-CIO v. City of Miami, 637 F.3d 1178, 1191 (11th Cir. 2011), her conspiracy claim under § 1983 fails.

In addition, Santoro alleges a conspiracy in violation of 42 U.S.C. § 1985. While her complaint is vague and lacks factual details regarding any such conspiracy, only subsection (3) of § 1985 could possibly be applicable here, which prohibits, *inter alia*, conspiracies to deprive a person or class of persons of equal protection of the laws. The elements necessary to prove a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002)(noting that "a claim under § 1985(3) requires the proof of invidious discriminatory intent"). Indeed, "[t]he language of Section 1985 which requires an intent to deprive one of equal protection or equal privileges and immunities means that there must be some racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action." Brewer v. Commissioner Internal Revenue, 435 F. Supp. 2d 1174, 1179 (S.D. Ala. 2006) (quoting Byrd v. Clark, 783 F.2d 1002, 1007-08 (11th Cir. 1986) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Here, as in Brewer, "Plaintiff does not advance any

allegations of racial or class-based discriminatory animus." Id. Therefore, Plaintiff's § 1985 conspiracy claim must fail.

In sum, "regardless of whether [plaintiff's] theory of recovery is a § 1983 or § 1985 conspiracy, the plaintiff alleges no facts that any of the parties reached an agreement to violate [her] constitutional rights." Brooks v. McDonald, 2016 U.S. Dist. LEXIS 23701, *11, 2016 WL 762685, *4, (M.D. Ala. Feb. 11, 2016), report and recommendation adopted, 2016 WL 792426 (M.D. Ala. Feb. 26, 2016) (citing Dickerson v. Alachua County Comm'n, 200 F.3d 761, 767 (11th Cir. 2000)); accord Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988), overruled on other grounds by, Rehberg v. Paulk, 611 F.3d 828 (11th Cir. 2010); Harvey, 949 F.2d at 1133. Here, Santoro has alleged no facts showing an agreement or understanding or willful participation between Defendant Brown (the psychiatric evaluator), Defendant Wilson (the social worker with DHR), Defendant Whitt (the attorney/guardian ad litem), or Judge Agerton in some sort of nefarious plot to civilly commit Santoro. Further, the amended complaint is devoid of allegations of racial or class-based discriminatory animus, which is necessary to establish a § 1985(3) conspiracy claim.

Accordingly, based on the foregoing, Santoro has failed to establish a conspiracy claim upon which relief may be granted, and Defendants' motions to dismiss Santoro's conspiracy claims are due to be granted.

**3. Sixth Amendment Claim against Defendant Whitt.**

Santoro's Sixth Amendment ineffective assistance of counsel claim against Defendant Whitt also fails because the rights guaranteed by the Sixth Amendment have not been extended to civil commitment proceedings.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  Although this issue has not been directly addressed by the United States Supreme Court, the Eleventh Circuit has recognized that certain rights guaranteed by the Sixth Amendment have not been extended to civil commitment proceedings.  See, e.g., Walker v. Hadi, 611 F.3d 720, 723 (11th Cir. 2010)(recognizing that the Sixth Amendment right against the admission of testimonial hearsay in a criminal trial "has not been extended to other contexts," such as civil commitment proceedings); see also United States v. O'Laughlin, 934 F.3d 840, 841 (8th Cir. 2019)(relying on "the logic of the Supreme Court in Addington, 441 U.S. at 428, 99 S. Ct. 1804," to hold that plaintiff did not have a Sixth Amendment right to proceed *pro se* when seeking discharge from a civil commitment, as "a civil commitment proceeding . . . is not a criminal prosecution for purposes of the Sixth Amendment;"); United States v. Sahhar, 917 F.2d 1197, 1206 (9th Cir. 1990)(holding that the Sixth Amendment does not apply to civil commitments); Stewart v. Secretary, Dep't of Children & Families,

2010 U.S. Dist. LEXIS 108280, *12, 2010 WL 3835779, *4 (M.D. Fla. Sept. 30, 2010) (recognizing that "no Supreme Court decision states that the Sixth Amendment right to counsel applies to civil commitment proceedings"). Accordingly, Santoro's Sixth Amendment Claim against Defendant Whitt is not actionable.

**4. Constitutional Claims Against Defendant Wilson.**

As noted, *supra*, Santoro alleges that Defendant Wilson, an elder abuse caseworker for Escambia County DHR, gave the probate judge inaccurate information about Santoro after she investigated an elder abuse claim related to Santoro's mother, with whom Santoro was living. Santoro contends that Defendant Wilson thereby violated her Fourth and Fourteenth Amendment rights during the civil commitment proceedings. Santoro further makes clear that she is suing Wilson in her individual capacity. Defendant Wilson has moved to dismiss the action against her pursuant to Rules 12(b)(1) and (6) of the <u>Federal Rules of Civil Procedure</u> and asserts that she is immune from the claims asserted against her. The Court agrees and recommends that Defendant Wilson's Motion to Dismiss be granted.

While the Eleventh Amendment grants immunity to states and those with a sufficiently close connection to the state from "official capacity" suits, it does not preclude a damages award against a defendant in his or her individual capacity, <u>Cross v. State of Alabama, State Dep't of Mental Health & Mental Retardation</u>,

49 F.3d 1490, 1503 (11th Cir. 1995).  However, qualified immunity, which Defendant Wilson has asserted, does provide protection from suit in one's individual capacity.  Qualified immunity generally shields government officials, performing discretionary functions, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

To invoke qualified immunity, a defendant "must show that he was performing an act within his discretionary authority." Williams v. Goldsmith, 4 F. Supp. 2d 1112, 1122 (M.D. Ala. 1998). "If that burden is satisfied, then it becomes the Plaintiff's duty to prove that the Defendant violated clearly established law." Id. (citing Godby v. Montgomery Co. Bd. of Educ., 996 F. Supp. 1390, 1400-03 (M.D. Ala. 1998)).  The "discretionary authority" hurdle is a "low, indeed almost invisible, one." Williams, 4 F. Supp. 2d at 1123.  "An official may show that an act was within his discretionary authority merely by showing that the acts (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Id. (internal quotation marks omitted).

In the current action, Santoro acknowledges that Defendant Wilson was performing her duties as a state social worker investigating an elder abuse claim when she made repeated house

calls to visit Santoro's mother and, at those visits, observed Plaintiff Santoro and insisted that Santoro was mentally ill and needed to seek treatment.  Santoro further submits that Defendant Wilson was listed as a witness on the petition to involuntarily commit Santoro, as someone with knowledge of Santoro's mental illness and behavior.  (Doc. 12 at 12; Doc. 12-1 at 2-3).  Thus, Defendant Wilson's only connection to this action is founded on her observations made while performing her duties as a case worker for the Alabama DHR.  No allegation is made that she ever took any action relevant to Plaintiff outside of this context.  Consequently, the actions she took were within her discretionary authority.  Because Defendant Wilson was acting within her discretionary authority, it falls to Santoro to show that Wilson violated clearly established law.  Williams, 4 F. Supp. 2d at 1122.  This Santoro has failed to do.

In her complaint, Santoro provides a lengthy description of the actions taken by Wilson as an elder abuse social worker, but the complaint is completely devoid of any action taken by Wilson that is connected to an alleged unconstitutional act.  Santoro alleges that Wilson was sent by DHR to investigate an elder abuse report, that she routinely visited the home of Santoro's mother as a part of her investigation, and that she observed Santoro while at the home.  According to Santoro, Wilson video recorded a portion of an encounter with Santoro at Santoro's mother's home.  In

addition, Wilson was listed as a potential witness on the petition to involuntarily commit Santoro, as someone who had knowledge of Santoro's mental illness and behavior.  Santoro has not, however, alleged that Defendant Wilson, nor any named Defendant, filed or instigated the petition to involuntarily commit her; rather, she alleges that it was her family members, namely Nicole Santoro and Christina Proctor, who initiated the commitment proceedings and provided false information to the Defendants and the probate judge.

While Wilson's precise role in the commitment proceedings is unclear, Santoro merely alleges that Wilson gave false or inaccurate testimony (which she observed and received from Santoro's family) to the probate judge during the commitment proceedings.  (Doc. 12 at 3, 12).  Assuming these allegations to be true, Santoro has completely failed to allege any constitutional violation by Wilson.  She does not allege facts showing any intentional deprivation of constitutional rights or interests.  At best, Santoro has alleged negligence by Wilson in her role as a social worker, but not facts that rise to the constitutional magnitude. See Shaw v. Strackhouse, 920 F.2d 1135, 1143 (3d Cir. 1990)(noting that "conduct amounting to no more than simple negligence cannot constitute a violation of the constitutional right to due process"); Edwards v. Williams, 170 F. Supp. 2d 727, 734 (E.D. Ky. 2001) ("[N]egligent conduct generally cannot form the basis of a § 1983 violation . . ., and even grossly negligent

conduct is insufficient.")(citing <u>Daniels v. Williams</u>, 474 U.S. 327, 330 (1986) and <u>Lewellen v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.</u>, 34 F.3d 345, 351 (6th Cir. 1994)).[14] Accordingly, Santoro has failed to state a constitutional claim against Wilson upon which relief may be granted.  Moreover, for the reasons discussed, *infra*, Santoro's conspiracy claims are also due to be dismissed.

### 5. Supplemental Jurisdiction over State Law Claims.

The district court may decline to exercise supplemental jurisdiction over state law claims after it has dismissed all claims over which it has original jurisdiction, taking into consideration judicial economy, convenience, fairness, and comity, as well as the Eleventh Circuit's admonition to dismiss any remaining state claims where, as here, the federal claims have

---

[14] Santoro does not allege and the record does not reflect that Wilson provided testimony at the hearing which led to Santoro's involuntary commitment. If Wilson did in fact testify, she is absolutely immune from civil liability in a § 1983 action for damages based on her testimony in the judicial proceeding.  <u>See</u> <u>Brisco v. LaHue</u>, 460 U.S. 325, 326-28, 340 (1983)(finding police officer was entitled to absolute witness immunity from damages for his alleged perjured testimony given at trial).  Witnesses are granted immunity for trial testimony to protect the judicial process from disruption and to allow them to perform without fear of intimidation or harassment.  <u>Id.</u> at 335; <u>see</u> <u>also</u> <u>Kurzawa v. Mueller</u>, 732 F.2d 1456, 1458 (6th Cir. 1984) (recognizing witness immunity for psychiatrists, social workers, and guardian ad litems); <u>Scarbrough v. Myles</u>, 245 F.3d 1299 (11th Cir. 2001) (witness entitled to absolute immunity for his testimony at a preliminary hearing); <u>Fullman v. Graddick</u>, 739 F.2d 553, 564 (11th Cir. 1984) (recognizing witness immunity for claims under § 1983 arising from witness' trial testimony).

been dismissed prior to trial.  See Carroll v. Zieman, 2019 U.S. Dist. LEXIS 40558, *4, 2019 WL 1177987, *2 (N.D. Fla. Feb. 12, 2019), *report and recommendation adopted*, 2019 WL 1172017 (N.D. Fla. Mar. 12, 2019).  Having found that Plaintiff's federal law claims are due to be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim(s).

**IV.  Conclusion.**

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants Margaret Wilson, Stephanie Brown, and Joe Whitt's motions to dismiss Plaintiff's § 1983 action pursuant to Rule 12(b)(1) or, in the alternative, under Rule 12(b)(6) for failure to state a claim (Docs. 30, 37, 42) be **GRANTED**, and that Plaintiff's action against these Defendants be dismissed.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the

provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge

on appeal the district court's order based on unobjected-to factual

and legal conclusions if the party was informed of the time period

for objecting and the consequences on appeal for failing to object.

In the absence of a proper objection, however, the court may review

on appeal for plain error if necessary in the interests of justice."

11th Cir. R. 3-1.

In order to be specific, an objection must identify the

specific place in the Magistrate Judge's report and recommendation

where the disputed determination is found.  An objection that

merely incorporates by reference or refers to the briefing before

the Magistrate Judge is not specific.

**DONE** this **23rd** day of **January, 2020**.

                                    /s/ SONJA F. BIVINS
                              UNITED STATES MAGISTRATE JUDGE